PHILIP GRAFF and Others, as Trustees of the LYONS BAPTIST CHURCH, Plaintiffs, *v.* G. CLOSS DUNNING and Others, Defendants.

Supreme Court, Wayne County, June 30, 1930.

*Remington, Remington & Keating*, for the plaintiffs.

*Glen & Williams*, for the Baptist Missionary Convention of the State of New York.

*Earle S. Warner*, for the defendants G. Closs Dunning and others.

RODENBECK, J. In *Graff* v. *Raymer* (136 Misc. 297) the trust was created by the testatrix "for such purposes as seem best for the welfare of said church, *but no special purpose*," so that the income could be used for any of the purposes of the Lyons Baptist Church. In *Graff* v. *Harrington* (137 Misc. 712) the trust was created "for the purpose of paying the salary of the pastor or officiating clergyman of said church and *for no other purpose*," so

that the income could be used only for the salary of the pastor of the church. In the case at bar the trust was created " to be used toward paying the pastor's salary *so long as said Society exists.*"

There is no obstacle in any of these cases to transferring the trust fund over to the Baptist Missionary Convention, a corporation formed to promote the purposes for which the Lyons Baptist Church was organized and under whose supervision it had existed. In all of those cases the authority of the statutes of the State and the powers of the court of equity are appealed to for the purpose of preserving and perpetuating the intention of the testatrix, by transferring the funds over to the Baptist Missionary Convention having cognate purposes with those of the Lyons Baptist Church. The general purpose of the testatrix was to promote the principles and ideals of Christianity, as expounded by the Baptist church, by providing funds for the general needs of the Lyons Baptist Church, as expressed in the *Raymer* case, or for the salary of pastors, as indicated in the *Harrington* and *Dunning* cases.

The language of the latter trust, " so long as said Society exists," creates no distinction. The testatrix, by the use of this language, intended to indicate that the income from the fund was to be used permanently for the salary of pastors, and was not to be diverted during the life of the church. She has made no disposition of the funds in case the church became extinct, and there is nothing to indicate that she intended that the fund should lapse in that event.

The thought in her mind was to limit the use of the fund to pastors' salaries, and the language used has the same force as that used in the *Harrington* case, where it was provided that the fund should be used for pastors' salaries and for no other purpose.

The general purpose of this bequest should be carried out and the fund should be turned over to the Baptist Missionary Convention, to be used for the payment of salaries of Baptist clergymen. (Pers. Prop. Law, § 12, as amd.; Laws of 1894, chap. 642; *Williams* v. *Williams*, 8 N. Y. 524; *Holmes* v. *Meade*, 52 id. 332; *Bowman* v. *Domestic & Foreign Missionary Soc.*, 182 id. 494; *Trustees of Sailors Snug Harbor* v. *Carmody*, 211 id. 286; *Matter of MacDowell*, 217 id. 454; *Sherman* v. *Richmond Hose Co.*, 230 id. 462; *Camp* v. *Presbyterian Society of Sackets Harbor*, 105 Misc. 140; *Matter of Mills*, 121 id. 147.) Judgment accordingly.